## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

In re:

Case No. 8:09-bk-4322-MGW

LIFE SCIENCES, INC.,

Chapter 7

Debtor.

_____/

## NOTICE OF HIGHEST AND BEST OFFER FOR
## SALE OF DEBTOR'S PERSONAL PROPERTY

Larry S. Hyman, as Chapter 7 Trustee ("Trustee") of the estate of Life Sciences, Inc. (the "Debtor"), by counsel, hereby gives notice in accordance with the Bidding and Sale Procedures as approved by the Court's *Order (A) Preliminarily Authorizing Sale of Certain Personal Property Free and Clear of Liens, Claims, Interests and Encumbrances, (B) Establishing Marketing and Bidding Procedures, (C) Establishing "Stalking Horse" Protections, (D) Establishing Objection Deadline and (E) Scheduling Final Sale Hearing* (Docket No. 134) (the "Procedures Order")[1], that he has selected the following as the highest and best offer for the Debtor's personal property being sold by the Trustee free and clear of all liens, claims, interests and encumbrances:

Life Sciences Advanced Technologies, Inc.          $110,000.00

The Trustee has identified **Life Sciences Advanced Technologies, Inc.** ("LSAT") as having satisfied the bidding requirements and terms set forth in the Procedures Order and is therefore a Qualified Bidder who shall be permitted to participate in the Live Auction and Final Sale Hearing scheduled before the Bankruptcy Court on **Wednesday, December 2, 2009 at**

---

[1] Unless otherwise defined, capitalized terms used in this notice shall have the same meanings ascribed to them in the Procedures Order and the corresponding Sale Motion (Docket No.129).

{00121387.DOC;1}

**11:30 a.m. EST** in Courtroom 8A, Sam M. Gibbons United States Courthouse, 801 N. Florida Avenue, Tampa, Florida.

As set forth in its Offer to Purchase Assets (the "LSAT Offer"), attached hereto as Exhibit "A", the LSAT Offer provides the following benefits over the Stalking Horse Offer of Petraco, Inc., as follows:

- Deleted Paragraph 7 titled "Conditions for the Buyer's Benefit", eliminating the contingency for securing satisfactory financing

- LSAT shall be responsible for the remediation and disposition of nuclear waste

- LSAT shall be responsible for all live scientific animals

The LSAT Offer shall serve as the opening bid at the Live Auction. Any subsequent competing bids at the Live Auction will begin at $120,000 ($10,000 greater than LSAT's competing bid of $110,000). Pursuant to the Bidding Procedures, the minimum bidding increment shall be $10,000 thereafter. At the Live Auction, the Trustee will solicit the highest offer and seek the Court's approval of the same at the immediately following Final Hearing pursuant to the Procedures Order.

DATED this 1st day of December, 2009.

/s/  *Chad S. Bowen*
Chad S. Bowen
Florida Bar No. 0138290
**Jennis & Bowen, P.L.**
400 N. Ashley Dr., Ste. 2540
Tampa, FL 33602
Telephone: (813) 229-1700
Facsimile: (813) 229-1707
Email:  cbowen@jennisbowen.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing *Notice* has been furnished, by electronic mail to **G. Baron Coleman** (baroncoleman@gmail.com), 2313 Seaton Park, Montgomery, AL 36116; **Richard McIntyre** (rich@mcintyrefirm.com), 6943 East Fowler Avenue, Temple Terrace, FL 33617-1714 and to those parties who receive electronic notices via CM/ECF in the regular course of business on this 1st day of December, 2009.


/s/ Chad S. Bowen
Chad S. Bowen

# EXHIBIT "A"

Deleted: EXHIBIT "B"¶

## OFFER TO PURCHASE ASSETS

The undersigned **LIFE SCIENCES ADVANCED TECHNOLOGIES, INC., a New York Corporation**, (the "Buyer") hereby offers (the "Offer") to purchase from **LIFE SCIENCES, INC, (the "Seller"),** located at 2900 72nd Street North, St. Petersburg, FL 33781 (the "Facility"), all of the Assets (defined  below) of the Seller used in its Biochemical and Reagent, Instrument, and Laboratory production (the "Business") as of every kind and description and wherever situated, upon and subject to the following terms and conditions:

Deleted: PETRACO
Deleted: Florida
Deleted: ,.
Deleted: Seller

1.  **Definitions**.

   "**Assets**" means all assets used in connection with the Business, including but not limited to, lab equipment, real property, personal property, company names, company trademarks, intellectual property, rights to telephone and facsimile numbers, machinery, equipment, real estate, receivables , goodwill, tangible and intangible personal property and rights in personal property owned by Seller, including furniture, trade fixtures and equipment, tools used in the business, telephone numbers and listings, customer lists, trade names, business records, supplies, leases, advance lease deposits, customer deposits, signs, all other personal property used in said business, and, if transferable, all permits, special licenses and franchises.  Notwithstanding the foregoing, as used herein, Assets excludes any cash or cash equivalents belonging to the Seller, as well as avoidance arising under chapter 5 of Title 11 of the United States Code and related causes of action.

Deleted: receivable

   "**Closing**" means that date which shall be not later than three (3) business days following the entry of the Purchaser Order at which the parties shall consummate the transactions contemplated herein, unless otherwise ordered by the Bankruptcy Court.

   "**Final Hearing**" shall mean the hearing scheduled by the Bankruptcy Court to consider final approval of relief requested in the Purchase Motion (defined below).

   "**Seller**" means Life Sciences, Inc., a chapter 7 debtor in  Bankruptcy Case Number 08: bk-09-4322-MGW (the "**Bankruptcy Case**") currently pending in the United States Bankruptcy Court for the Middle District of Florida, Tampa Division (the "**Bankruptcy Court**"), and being administered by Larry S. Hyman, as Chapter 7 Trustee (the "**Trustee**").

   "**Purchase Motion**" means that motion to be filed by the Trustee with the Bankruptcy Court seeking, among other things, approval of this Offer.

   "**Purchase Order**" means an order of Bankruptcy Court that approving the sale of the Assets to the Buyer pursuant to the provisions in this Offer.

2.  **Purchase Price**.  The purchase price (the "Purchase Price") payable by the Buyer to the Seller for the Assets shall be $110,000.00.

Deleted: 100

3.  **Payment of Purchase Price**.  The Purchase Price shall be paid and satisfied by the Buyer as follows:

(a) by delivering to the Trustee, upon execution of this Offer, a check payable in trust in the amount of $11,000.00 as a deposit (the "Deposit"); and

Deleted: 10

(b) by delivering to the Seller the remaining balance of the Purchase Price in cash or immediately available funds (which may include a certified check or wire transfer), upon Closing.

Deleted:

(c) The Deposit shall not become property of the estate absent future order of the Bankruptcy Court. If the Bankruptcy Court does not approve the sale of the Assets to the Buyer pursuant to the terms of this Offer in full (unless otherwise approved by the Buyer), the Buyer shall have no further obligations under this Offer, and the Seller shall not be entitled to the Deposit and it shall be forthwith released to the Buyer.

In the event the Buyer is the successful purchaser of the Assets, the Deposit shall be applied as a credit to the total Purchase Price of the Assets. Notwithstanding anything herein to the contrary, if the Buyer wishes to take an assignment from the Seller of an executory contract or unexpired lease belonging to the Seller, then in addition to the Purchase Price Buyer shall be responsible for paying any "cure" amounts and demonstrating adequate assurances of future performance as may be required by the Bankruptcy Code. Should Buyer fail to carry out this agreement after acceptance of this Offer by Seller, the Deposit, shall, at the option of the Trustee, be paid to or retained by the estate as liquidated damages.

4. **Investigation**. The Buyer and its advisors shall, during the Seller's regular business hours, have reasonable access to the Premises, books, leases, and other records of the Business for the purpose of investigating the business and affairs of the Business from the date this Offer is executed by the Buyer until 5:00 P.M. EST on that day which is two (2) business days prior to the Final Hearing (the "Inspection Period").

5. **Acceptance Date**. Due to the perishable nature of certain of the Assets, this Offer shall remain in effect for twenty (20) days from the date of execution by the Buyer. Without limiting the foregoing, the Trustee agrees to use his reasonable best effort to obtain the Bankruptcy Court's approval of this Offer as soon as practicable. **Time is of the Essence**.

6. **Representation and Warranties**. The Seller represents and warrants to the Buyer as follows:

(a) The Trustee is the duly authorized representative of the Seller and, subject to the approval of the Bankruptcy Court, has the power to enter into the transactions contemplated in this Offer.

(b) The Assets are being conveyed to the Buyer on an "AS IS," "WHERE IS," and "WITH ALL FAULTS" basis; provided however that the Seller represents and warrants that pursuant to the Purchase Order it shall be transferring all of its right, title, and interest in and to the Assets, free and clear of any and all claims, liens, encumbrances and security interests whatsoever.

7. **Bankruptcy Proceeding**. The Buyer acknowledges and agrees that this Offer is subject to higher and better offers, and may be subject to an auction of the Assets. Moreover, this Offer is subject to and contingent upon the entry of the Purchase Order by the Bankruptcy Court providing that Assets are purchased free and clear of encumbrances and that Buyer will not be imposed upon any liability of Life Sciences, Inc. ***This Offer is specifically conditioned upon approval of the United States Bankruptcy Court and the Trustee for Bankruptcy case 04322-MGW of its terms and approval of a Purchase Order***. The Purchase Order shall offer protection to the Buyer and vest title to the Assets in the Buyer free and clear of all liens and encumbrances and limit successor liability it totality. The Buyer, at its discretion, has the option assign its rights under this Offer to a majority owned affiliated entity. ***Any substantial requirements or changes above and beyond those described in this Offer will be considered a substantial alteration of this Offer so as to cause this Offer to be NULL AND VOID. If any requirement or change is made to this Offer by the United States Bankruptcy Court or the Trustee for Bankruptcy case 04322-MGW, the Buyer shall not be liable for any provision under this Offer and the Deposit shall be henceforth returned immediately to the Buyer.*** The Buyer may withdraw this Offer at any time prior to the conclusion of the Inspection Period, and thereupon the Deposit shall be returned forthwith to Buyer

8. **"Stalking Horse Protections."** In addition to the Purchase Price set forth in this Offer, the Buyer shall pay the "stalking horse protection" expenses of the Seller approved and awarded by the Bankruptcy Court, not to exceed $10,000.00.

9. **Confidentiality**. Until the Trustee files the Purchase Motion, this Offer shall be confidential and not used to induce further "stalking horse offers" for the purchase of assets of Life Sciences, Inc. However, in connection with the filing of the Purchase Motion, the Trustee shall be entitled to include a copy of this Offer as part of the Purchase Motion and shall thereafter be entitled to use it for purposes of soliciting higher and better offers for the purchase of the Assets.

10. **Real Property**. AS to ANY REAL PROPERTY AFFECTED by THIS OFFER to PURCHASE, the FOLLOWING TERMS SHALL APPLY UNLESS SPECIFICALLY PROVIDED to the CONTRARY HEREIN:

(a) Buyer shall not be responsible or liable for any taxes, special assessments, rent, utilities, or any other incurred expenses of Life Sciences, Inc. prior to the date of sale under this Offer;

(b) Buyer shall be responsible for all costs incurred in remediating any nuclear waste remaining at the Facility after Closing, but shall not be responsible for or assume liability for any claims or other costs associated with any nuclear waste incurred prior to Closing; and

(c) Buyer shall have the right to enter into the premises upon where the Assets are upon the Bankruptcy Court's approval of this Offer and to retrieve all assets of Life Sciences, Inc. for a period of thirty (30) days from the Closing Date; provided however that any related use and occupancy expenses including, without limitation, rent (on a per diem basis),

**Deleted:** 7. Conditions for the Buyer's Benefit. Until the conclusion of the Inspection Period, this Offer is conditional upon the occurrence following conditions:¶
(a) The Buyer arranging satisfactory financing to enable it to complete the transaction; and¶
(b) The Buyer reviewing the Assets and determining that the Assets conditions are satisfactory to the Buyer; and¶
8

**Deleted:** 9. "Stalking Horse Protections". This Offer by the Buyer is made to expedite the actions of the Bankruptcy for the Benefit of Life Sciences, Inc. and its creditors. If, following acceptance of this Offer, an asset auction is held and Buyer is outbid on any or all of the assets of Life Sciences, Inc., subject to Bankruptcy Court approval the Buyer shall be entitled to reimbursement of its out-of pocket expense (including attorneys fees, travel expenses, and related costs) up to a cumulative amount of $10,000.00 out of proceeds of the winning bid for the Assets. Additionally, the Trustee shall seek approval in the Purchase Motion of an overbid amount of $110,000.00 and minimum bidding increments thereafter of $10,000. ¶
10

**Deleted:** offer

**Deleted:** .

**Deleted:** 11.

**Deleted:** ¶
(a)

**Formatted:** Indent: Left: 0.13", Space Before: 12 pt, After: Auto, Line spacing: At least 12 pt, Numbered + Level: 1 + Numbering Style: a, b, c, ... + Start at: 1 + Alignment: Left + Aligned at: 0.38" + Tab after: 0" + Indent at: 0.63"

**Deleted:** .

**Deleted:** (b)

**Formatted:** Indent: Left: 0.13", Numbered + Level: 1 + Numbering Style: a, b, c, ... + Start at: 1 + Alignment: Left + Aligned at: 0.38" + Tab after: 0" + Indent at: 0.63", Tabs: 0.38", List tab

{00121325.DOC;1}

utility, and/or moving expenses incurred after the Closing shall be the solely the responsibility of (or, as applicable, immediately reimbursed to the Trustee by) the Seller.

11. **Time of the Essence. TIME is of the ESSENCE** as to: DEPOSIT, OCCUPANCY of the REAL PROPERTY, POSSESSION and RIGHT to USE of and DISPOSITION of the PERSONAL PROPERTY, and DATE of SALE. The nature of the business is such that its Assets consist of materials and finished goods that are highly perishable. In addition, live laboratory animals are included in the Assets, which require a high level of professional care. Buyer is concerned that any delay may cause substantial loss of value of such Assets.

Deleted: 12.

12. **Buyer's Obligation.** THE BUYER'S OBLIGATION to CONCLUDE THIS TRANSACTION is CONDITIONED UPON the CONSUMMATION of the CONTINGENCIES PROVIDED FOR IN THIS OFFER AND THE FOLLOWING:

Deleted: 13.

(a) Buyer agrees that unless otherwise specified, Buyer will pay all costs of securing any financing to the extent permitted by law, and to perform all acts necessary to expedite such financing.

(b) Legal ownership of the Assets shall be delivered to Buyer upon Closing through execution of a Trustees' Bill of Sale; provided, however, that the Buyer will not assume any material obligations or liabilities of the Seller unless specifically set forth herein. All previous obligations of Life Sciences, Inc. will remain the responsibility of Life Sciences, Inc. and shall be so affirmed by the Bankruptcy Court.

(c) The Deposit and any other portion of the Purchase Price delivered by Buyer prior to Closing shall be held in escrow by the Trustee or Trustee's counsel pending the Closing or further order of the Bankruptcy Court.

(d) All Deposit money paid shall be applied toward payment of the Purchase Price if this offer is accepted on or before December 8, 2009, otherwise, to be returned to the undersigned Buyer no later than December 15, 2009 and this offer shall become null and void.

(e) Subject to the terms set forth herein, this offer shall not become binding upon Buyer and Seller until submitted to the Bankruptcy Court by the Trustee in connection with the Purchase Motion.

Deleted: it

13. **Personal Property.** AS to the BUSINESS or ANY PERSONAL PROPERTY AFFECTED by THIS AGREEMENT, the FOLLOWING TERMS SHALL APPLY UNLESS SPECIFICALLY PROVIDED to the CONTRARY HEREIN:

Deleted: 14.

(a) Personal property tax, prepaid insurance (if assumed) and rents shall be prorated at the time of closing. Proration of personal property taxes shall be based on the personal property taxes for the current year, if known, otherwise on the personal property taxes for the preceding year.

(b) Sales tax, if any, shall be paid by Seller.

(c) Seller shall deliver a Trustee's bill of sale date of closing and, in accordance with the Purchase Order, shall convey the property by free and clear of all liens and encumbrances.

(d) Seller shall comply with the applicable Bulk Transfers Law.

(e) Seller shall continue to conduct the business in a regular and normal manner under the circumstances and shall use Seller's best efforts to keep available the services of Seller's present employees and to preserve the good will of Seller's suppliers, customers and others having business relations with Seller.

(f) Buyer shall assume responsibility for all live scientific animals from and after the date of Closing.

14. **Further Contingencies**.  This offer is contingent upon the following:

Seller shall furnish to Buyer within ten (10) days of the date of acceptance of this offer, and Buyers being satisfied with same, the following information and schedules:

(a) To the extent available in the Seller's existing books and records, an inventory of all furniture, fixtures and equipment included in this transaction.

(b) To the extent available in the Seller's existing books and records, copies of all leases affecting equipment, real estate or signs; and all copies of other leases pertaining to the business.

(c) To the extent available in the Seller's existing books and records estimated principal balance of accounts receivable.

(d) To the extent available in the Seller's existing books and records copies of all licenses used in operating the business.

(e) To the extent available in the Seller's existing books and records copies of latest real estate and personal property tax bills.

Buyer has read, fully understands, and acknowledges receipt of a copy of this offer to purchase. This offer is respectfully submitted by Life Sciences Advanced Technologies, Inc., pursuant to the terms outlined above.

Date:    November 30, 2009

Buyer:    /s/ Rich J. McIntyre  (hard copy to follow with original signature)

       Rich J. McIntyre, as expressly authorized agent and signatory for Life Sciences Advanced Technologies, Inc.

Deleted: 15.

Deleted:

Deleted: Petraco

Deleted: 20

Deleted: G. Baron Coleman  (

Deleted: G. Baron Coleman

Deleted: Petraco

{00121325.DOC;1}

Attorney for Life Sciences Advanced Technologies, Inc.

**Deleted:** Peter J. Smyczek and Petraco

SUBJECT TO (1) HIGHER AND BETTER OFFERS, AND (2) THE REVIEW AND APPROVAL OF THE BANKRUPTCY COURT, ON BEHALF OF THE TRUSTEE HEREBY ACCEPTS THE OFFER.  THE UNDERSIGNED HEREBY AGREES to SELL and CONVEY the ABOVE-MENTIONED PROPERTY on the TERMS and CONDITIONS as SET FORTH and ACKNOWLEDGES RECEIPT of a COPY of THIS AGREEMENT.

Date:_____

_____

Larry S. Hyman

Chapter 7 Trustee of Life Sciences, Inc.:_____

{00121325.DOC;1}